### ESTATE OF T. J. MILLIKEN.

No. 6140—April 5, 1875.

JURISDICTION.—RESIDENCE AS A JURISDICTIONAL REQUIREMENT. MAY BE ENQUIRED INTO BY DIRECT PROCEEDING AT ANY TIME FOR THE PURPOSE OF HEARING APPLICATION TO REVOKE LETTERS. FACTS SHOWING PLACE OF RESIDENCE.

Where application by petition has been made to this Court for letters of administration, and notice of hearing given, and letters issued, if at any subsequent time in the administration, it is made to appear that the Court had no jurisdiction by reason of non-residence of decedent, the Court will entertain a motion for discontinuance of proceedings. The fact of the giving of ten days' notice by posting of hearing on petition for administration, does not bind the Court, when a direct attack is made upon the jurisdictional right of the Court.

FACTS from which the place of residence may be determined.

Construing sections, Pol. C., 52; C. C. P., 1294.

*N. G. Curtis,  T. J. Clunie* and *J. F. Finn,* for the petitioner.

*J. G. Eastman* and *J. M. Coghlan,* for administrator.

Deceased died intestate in Sacramento, October 29, 1874. C. M. Stratton filed petition for letters of administration, together with the written request of Katie P. Milliken, who claimed to be the widow of the deceased. Notice of hearing was given by posting under the statute. On the hearing no person appeared except said Katie P. and the petitioner, and after hearing their testimony, letters were granted to petitioner, the order reciting that it was "proved by the oath of Katie P. Milliken that deceased was a resident of the City and County of San Francisco," and letters were thereupon issued. Feb'y 10, 1875, Emma H. Milliken, daughter of deceased by former marriage, filed petition for revocation of the letters to Stratton, upon the grounds that deceased was at death a resident of Sacramento County, and that said Katie P. Milliken *alias* Katie P. Pearson, upon whose request letters were issued to Stratton, was a mulatto or negro, and that deceased was a white man, and that the marriage between them was null and void. Upon this petition an order to show cause was made and citation issued returnable February 23, 1875.

On that day the parties appeared by their attorneys, and Stratton demurred to the petition of Emma H. Milliken. Upon the argument of the demurrer the only point presented was that two causes of action had been improperly joined in the petition, and upon that ground, and no other, the demurrer was overruled. The administrator by leave then filed a special demurrer, and also an answer. It was agreed between counsel that, for the convenience of witnesses, proof should be taken, and thereafter the whole case, including issues of law raised by the demurrer and issues of law and fact raised by the answer, should be considered and passed upon. Proofs were accordingly taken, and the various questions of law and facts were discussed by counsel. Upon the argument four points were made, viz:

First—By the respondent, Stratton, that this Court having found, in the order appointing Stratton, that deceased was a resident of this city and county, that finding cannot now be reviewed, and the question of residence is settled so far as concerns this administration.

Second—By the petitioner, Emma H. Milliken, that the deceased was at the time of his death a resident of Sacramento county, and therefore this Court has no jurisdiction.

Third—By the petitioner, Emma H. Milliken, that Katie P. Milliken is a mulatto and the deceased was a white man, and that the alleged marriage between them was void, under Sec. 60, of the Civil Code, and that she had no authority to either nominate an administrator or to have letters to herself.

Fourth—By the respondent, Stratton, that Sec. 60, of the Civil Code, is in violation of the 14th Amendment to the Constitution of the U. S., and is void.

It was agreed between counsel for the respective parties, that if this Court should be of opinion that the question of residence could now be inquired into, and should find from the evidence that deceased was a resident of Sacramento, the order proper to be made would be an order discontinuing the proceedings in this Court and dismissing the same; and that the question of validity of the marriage would not be for present decision; but if this Court should retain the proceedings, the validity of the marriage and the force and effect of Sec. 60, would be passed upon.

By the COURT: As to the first point, that the question of residence cannot now be inquired into; I have read all the cases cited by respondent; and I find them to be uniform that the question of residence cannot be raised by *collateral* attack, that is, by questioning, in another Court, the correctness of the finding of this Court. But this proceeding is not a collateral attack; it is a direct attack. I am not referred to any case holding that a direct attack cannot be made. In 28 Vermont, 667, cited by respondent, it is held that the order of the Probate Court can be questioned *only* by some

direct proceeding; and in 14 Gratt., 236, it is held that the order is voidable on citation or appeal.

In the case at bar, the notice of hearing application for letters was by ten days posting in this city and county, and the only witness examined as to residence was Katie P. Milliken. If it were true that after such hearing the question of residence could never again be raised, except by appeal, it would of course result, that upon the death of any citizen of this city and county, no matter how well known at home, any person could go to San Diego or any distant county, petition for letters, give ten days notice by posting, make oath that the deceased resided in that county, take his letters, and thereby prevent the possibility of the subject being inquired into again in that Court. This objection by respondent is overruled.

Second—As to the place of residence of deceased at the time of his death. From 1853 deceased had been a resident of Sacramento city and county; was a merchant, member of the firm of Milliken Bros.; the firm carried on quite an extensive business, and had considerable property in that city; deceased gave his personal attention and attendance to the business; he had a family, consisting of a wife and several children, who with himself occupied the family residence on 16th and H. streets. Prior to October, 1873, he formed illicit relations with the petitioner, Kate P., also a resident of Sacramento, and in October, 1873, his wife obtained a divorce from him. At some time prior to the divorce he took rooms and board at the Golden Eagle Hotel in Sacramento. He remained at that hotel until April, 1874; portions of the time Katie P. was at the hotel, with him, and he was occasionally away for a few days at a time. In January, 1874, he was married to Katie, and he took rooms in San Francisco which were occupied from that time on by Katie, except when she made occasional visits to him at Sacramento, and by himself when he made occasional visits to her in San Francisco. In April, 1874, he removed to the International Hotel in Sacramento, and occupied rooms there until July 23, 1874, from which date until Aug. 13, 1874, he boarded at another hotel in Sacramento. Aug. 13

he returned to the International Hotel and occupied his rooms there thence until his death, Oct. 29, 1874. He had continued to make occasional visits of a few days to Katie in San Francisco, and she visited him in Sacramento. In August and September he made a trip to the mountains for his health, and after his return he was confined to his room by his last illness for about ten days. He was constant in his attendance at the store of Milliken Bros. previous to his last illness, except when temporarily absent from the city as above stated.

He had relatives, friends and business acquaintances in Sacramento, none of whom, so far as appears, had any information of any intended change of residence. He told Katie and persons of whom they had rooms in San Francisco that he intended to reside in that city, but it does not appear that he had carried that intention into effect. Indeed, in my opinion those declarations were made more to conciliate Katie, in regard to whom he labored under much social criticism in Sacramento, and who found her residence there to be unpleasant, than to indicate any real intention upon his part.

I find as facts that deceased was a resident of the city and county of Sacramento from 1853 continuously until his death, and that at the time of his death he was a resident of that city. It therefore follows that this Court has no jurisdiction to continue the administration of his estate; and under the agreement of counsel hereinbefore noted the proceedings for administration should be discontinued.